Now back to work. The first case for argument is 23-1817, Avago Technologies v. Netflix. Mr. Young, whenever you're ready. Good morning, Your Honors. May it please the Court? Dan Young for Avago Technologies. I'd like to spend the first eight minutes dealing with the issues that we've raised with the Board's decisions on the Baldwin Reference and save the rest of the time for rebuttal for Netflix's cross-appeal. Unlike the Cooper Reference, which teaches you that you are multiplexing two streams together, meaning that you take two streams, combine them into a single one, and send it, the Baldwin Reference is much different. The Baldwin Reference deals with not multiplexing, but multicast, a multicast system, meaning that you have a transmitter, and then you have a number of receivers, and so you are transmitting streams to those various receivers. And this is clear from Baldwin. Figure 4, as an example, shows multiple streams being sent from the transmitter. And Figure 7 shows, as an example, of multiple receivers, 708-1 through 708-N. When there's a channel change in the requested information, a receiver, one of those various receivers is part of a multicast system. One of those receivers can join an alternate stream and then eventually switch over to the mainstream. But Baldwin does not teach, as required by Acclaim 1 of the 014 patent, that the receiver receives multiple streams, and then identifies which one to ultimately present to the user. With respect to element 1C, which deals with receiving multiple streams... Can you just remind me, what has been decided and what is still in dispute about whether the identifying of the expected lower latency has to occur after more than one stream has come into the receiver, or whether that can be the information about the expected result, expected latency, can be sent ahead of, say, the second stream being received? Yes, Your Honor. So that deals with the claim construction issue. The Board decided not to decide that issue. And in the footnote on page 19 of their decision, they said, well, we don't need to decide that, because we find, the Board found, that the receivers discussed in Baldwin received multiple streams and then identify which one to process based on what it deemed to be the lowest latency. So the Board never decided the claim construction issue, which is why it's not determinative in this case, because they went ahead and they found... So what we're disputing is the Board's findings with respect to elements 1C and 1D. With respect to 1C, which is the receiver receiving multiple streams, the Board's findings are incredibly thin. They cite it to two places in the specification for Baldwin. The first is in column 6, line 30 through 33, which just says, when they multicast multiple join-in streams in a mainstream at all times. And they said that we argued that Baldwin only teaches transmitting a single stream, which is not the case. We never argued that. Can you tell, are we on page 18 and 19 of the, where you're citing the Board's opinions? Page 18, Your Honor. Okay. We never said that Baldwin transmits a single stream. What we said was the receiver only receives a single stream. And the only other place that they cited, the Board cited, was column 9, lines 29 through 33, and it says these alternative transmissions need not be sent concurrently to a particular receiver within the multicast environment. Rather, each one is prepared for transmission, but a particular multicast stream is sent to a particular receiver only when requested by the receiver. And they said, well, because it says need not, that means that it could also send them simultaneously. But there is no teaching in Baldwin that teaches that the receiver is receiving two streams concurrently. With respect to the identification, the Board also cited to two, also provisions in column 6 and column 9, where it says individual client devices may determine for themselves which stream to be listening to at a given point. That's true, but you have to then look at how does the receiver make that determination. And it's very clear, because what the receiver is doing is it's saying, well, which is the next random access point, RAP? The receiver doesn't know that. It's being transmitted by the transmitter. So the only thing the receiver knows is that there's a main stream and these alternate streams. It doesn't know where the random access point is. How does it find out? Well, in figures 5, it sends a query. It says, goes to the transmitter and says, where's the next random access point? And that's in step 512 of figure 5. And then the transmitter comes back in step 612 of figure 6, and it says, well, here's the next random access point. Here's the one that's coming. And then the receiver joins that random access point. So there the transmitter is identifying which stream the receiver should join, and then the receiver is joining it. So the identification, again, element 1B says identifying by the receiver which of the plurality of video information streams when processed is expected to result in a lower latency. The receiver is not identifying it. In fact, step 514 of figure 5 says, join the alternative multicast transmission identified by the query, identified by the transmitter. Now, the board said, well, figures 5 and 6, they don't necessarily detail all the teachings of Baldwin. But there's no other teaching in Baldwin that says anything about how the receiver is making this identification because the receiver doesn't know where the random access point is, and it has to be identified by the transmitter. Finally, Netflix attempts to bolster the board's decision and said, well, the board's got it right. Look at an example of figure 8, and it shows multiple communication links, 812 through 820. But those are different communication links. So there's like phone and video. Those are not, that's not what this patent is talking about. This patent is talking about multiple streams of the requested information. So when you change the channel, you're requesting channel 4 or channel 6 or whatever it may be, not a situation where you show the system of figure 8 where you have multiple channels coming into the receiver. So in summary, with respect to our appeal on the Baldwin reference, we do not believe there's substantial evidence because the reference simply does not teach, and it would be counter to the teachings of Baldwin. For the receiver to receive multiple streams and then decide. In fact, right above the sentence relied on by the board in column 6, it says the total number of outgoing IP multicast is not limited by the available bit rate of any particular client. That's exactly what we're talking about. But the reason you want to maximize the stream to the bit rate is because you want to present the most high quality of the video. You want to have the highest definition. In other words, the most data being processed by the receiver. You don't want to use that up by sending the receiver and processing all seven or eight or however many streams there are. You want to identify the one that has the current most soon the next coming random access point and just process that one. So you have any questions, I will take the rest of my time. Thank you. Good morning. Please proceed. Good morning. Chris Ponder for Appellee Netflix. I think I would go just argued that one C and one D there are just simply no teachings that the board relied upon to show that the receiver both makes the determination and receives multiple streams. And that's not the case. And I'd like to look at the specific disclosures that the board looked at. So if we can start with appendix page 9, I'm sorry, appendix page 446. This is the Baldwin reference. Starting at column 6, we see this is the beginning of the detailed description, and the patent describes the latency problem and introduces the idea of the random access points. At line 28, Baldwin describes how you provide at all times multiple join-in streams and a mean stream. And importantly, at line 31, Baldwin teaches, quote, Furthermore, individual client devices may determine for themselves which stream to be listening to at any given point. If you look at the final written decision on page 18, the board quoted that teaching and found that it is, quote, contrary to patent owner's argument that the server selects the stream. If we go back to appendix page 448, we reach the column 9 teachings. Lines 20 to 24, again, describe providing a mean stream and these phase staggered alternative streams, the join-in streams. And at line 24, Baldwin states, By sending multiple different streams, tuning time is improved because the receiver may select one of the lead-in streams to play. Going back to the final written decision at page 18, the board quoted that teaching and explained how that teaching reinforces the other teaching we looked at because the board said that this teaching, quote, explains the benefit of sending multiple streams and allowing the client device to select a stream. If we can go back to 448, the next portion of column 9, line 29, Baldwin teaches that these alternative transmissions need not be sent concurrently to a particular receiver within a multicast environment. The final written decision on page 19, the board correctly observed by stating that the streams do not have to be sent concurrently, Baldwin further teaches or reasonably suggests that alternative streams can be sent to a receiver. Can you remind me, is there an undisputed current concurrency requirement in the claim, or is that disputed? I believe that is still disputed if you're referring to the claim. But the board, did the board assume that there have to be two coming in at the same time? The board said they found that Baldwin teaches it in the order of the proposed construction by Avogadro without reaching whether the construction is correct or not. But going back to this need not language, if one says a pencil need not have an eraser, the listener would understand that a pencil can have an eraser. If one says a cookie need not have chocolate chips, the listener would understand that a cookie can have chocolate chips. Might be false. Might be false. And what's important is Baldwin says need not. It doesn't say are not. It does not say that the concurrent streams are not sent concurrently. And this is a substantial evidence question. It's reading the prior art. This is a substantial evidence question, and so the board considered all of these teachings and found all need evidence after considering the expert testimony that Netflix's interpretation of the reference was correct and that limitations 1C and 1D are taught. If there are any questions, I'd like to move to the motivation to the cross-appeal.  The only limitation that the board found is not taught by Cooper is limitation 1D. And if you look at the motivation. Can you go back and tell me? I found it a little confusing, and maybe this is what led the board arguably astray. You were arguing each of Baldwin and Cooper each independently teach 1C and 1D. And then you were saying that there's a third? Well, actually, Your Honor, I was planning to just walk through and show you exactly how the petition is structured. But for limitation 1D, what we did is in our mapping, we showed how both references have teachings for all the limitations. On the limitation 1D, as Avogadro points out in the yellow brief at 4 to 5, we included the specific statement that to the extent that Avogadro argued Cooper's teachings for this limitation 1D were not sufficient, that it would have been obvious for a combination of Cooper and Baldwin to use the teachings of limitation 1D from Baldwin. And we laid that out in multiple places. If I can take you to appendix page 70, this is the petition. And what we did is we put an explanation of the proposed combination of Cooper and Baldwin at the beginning. And you can see that on 70, this first paragraph kind of gives a high-level overview of the teachings of Cooper relevant to claim 1. On page 71, we have the transition to Baldwin, where we talk about and introduce Baldwin's teachings for identification and selection. This is the limitation 1B aspect. Then we proceed to explain, and it's the bottom paragraph, we talk about combining Cooper's receiver teachings, so all the teachings other than D, with Baldwin's teachings of providing alternative streams with staggered access points and selecting the streams. So that's the limitation 1D. We then proceeded on page 72 to start giving the motivations to combine. So, for example, in the middle of the page. So what is your view of why the board, in your view, went astray? So I think what happened is at institution, they thought that Cooper and Baldwin teach all limitations of the claim. And each of them did?  And there was a difference in what we pointed to in limitation 1D for Cooper. Cooper has a different teaching that is more akin to what Mr. Young mentioned about this multiplexing of streams, which is not part of the claims. One of the ways that Cooper and Baldwin are different is Cooper had a multiplex transmission arrangement. We didn't know where they would go argument-wise because of infringement issues. Because obviously, we're Netflix, we do internet stuff, that's more like Baldwin than Cooper. We proceeded here then to explain why you would substitute Baldwin's teachings for D with Cooper. So, for example, in the middle of page 72, it says, while Cooper teaches identifying which alternative streams is more readily available, and then recaps it, we say combining Baldwin's identification selection teachings with Cooper's receiver produces a combined device with predictable results, and explain that analysis. On 73, we did the same thing for a different motivation to combine. And so on. Now, I'd like to take you to the mapping of claim 1. So, if you proceed to page 76 of the petition, you can see this is where we start going through the teachings of the references. And so you see claim limitation 1A begins. We go through the Cooper teachings. And if you can go with me to page 86, you can see that we get to limitation 1D. We proceeded to talk about Cooper's teachings on 86, 87, 88, and then we get to 89. In 89, we conclude the discussion of Cooper and say, to the extent that the patent owner argues that the foregoing teachers of Cooper relating to a receiver, and I won't read the rest of that, we say a position would have found it obvious for Cooper and Baldwin to teach this limitation based on Baldwin's teachings. And we then proceed to explain Baldwin's teachings on 89, all the way through to page 42. Okay, so just in the interest of time. Yes. And the board says it's not clear how or where petitioner relies on the proposed combination to satisfy any specific claim limitations. Yeah. Is your disagreement with the board that you don't think they carefully read what you were saying? Or are you saying, sort of as a legal matter, they were requiring too much with respect to each specific claim limitation? I don't think they went back and carefully looked at the petition anew. When we were at trial, we thought that the board's hangup was that Cooper and Baldwin teaches every limitation of the claim. And so what the parties were arguing about was whether there would still be a motivation to combine Cooper and Baldwin if Cooper, in fact, taught all limitations. But after the trial, the board decided, oh, you know what, we're going to agree with Avogadro that Cooper limitation 1B is not taught. And I don't think they went back and looked at their motivation to combine analysis. So they thought because it's not taught, then you didn't. If Cooper doesn't have this, then there's not sufficient motivation because of that fact? No. Their original analysis was that if the two references teach all limitations, you wouldn't be a person of ordinary skill in the art wouldn't be motivated to combine aspects of the two teachings. So basically, if Cooper fully taught every limitation and Baldwin taught every limitation, Avogadro argued up until trial, well, why would a person of ordinary skill in the art combine something from Baldwin into Cooper? And that's what we argued about. That actually turned out to not be the issue because then the board decided at the trial, you know what, we're going to now accept this argument that Avogadro made on limitation 1B for Cooper. We didn't know that was the issue. If we knew, if they had given us some indication at the hearing that, oh, you know what, we're going against you now, and it turns out Cooper doesn't teach 1B, well, then I could have easily walked them through this. So you're asking for a remand so you have an opportunity to walk them through this? Yes, and have them make particularized findings with respect to one combining Cooper's receiving teachings with Baldwin for 1D as laid out in the petition. Did you make some kind of argument, and I don't remember it with enough specificity to be terribly specific in this question, something about the board in addition to not grappling with an argument you made about motivation to combine, also took an unduly narrow focus of what kind of motivation you would need, namely a focus on the particular claim limitation? Am I, I'm not remembering that right? I think the issue was that the board was, I think they were faulting us that we didn't sufficiently say that there was a problem with Cooper for 1D, and that was an argument that Avogadro made, that this 1D where we have to the extent that we actually needed to say, well, Cooper doesn't have this, and hence you have to combine with Baldwin. I think that was kind of the... I thought your argument was that they were requiring too much by asking you to show motivation to combine for each claim limitation. I think what the board said, and this goes back to them misapprehending the petition, they were saying that we didn't put in under this heading of limitation 1D enough about the motivation to combine Baldwin's teachings for 1D with Cooper. Okay, but you're saying the board wasn't wrong, they were just, you didn't know you would make which argument to make or what they were going to do? Is that your... Well, I think the board was wrong because we just walked through and showed how under 1D we said, here's what you would combine, and then pointed to the motivation to combine section which specifically addressed this combination of the aspects of limitations 1D with Cooper. Couldn't the board just as easily found the opposite? That we didn't show motivation to combine? Right. The problem is that they didn't say... Why shouldn't we vacate and remand to consider an argument that perhaps assumes that the board did consider already? So I think the reason why it needs to be remanded is they said that we didn't articulate a motivation to combine with limitation 1D, and clearly we did. If there's one thing we did was we said, if we lose on this Cooper argument for 1D, you should make this combination with respect to Baldwin, and here's why a positive would have been motivated to combine Baldwin's teachings for limitation 1D into Cooper's receiver. And that's the material at Appendix 70 to 72? Yes, Your Honor, that section. Okay. I want to save your rebuttal time in case you need it. Thank you, Your Honor. Thank you, Your Honor. Just very quickly, with rebuttal with respect to the issues on Baldwin, just one point. Their argument with respect to Column 9, Lines 29 through 33, where it says, these alternative transmissions need not be sent concurrently to a particular receiver, and they say, well, need not means that you also could. But the very next sentence says, rather, so in other words, you need not do this. Rather, each one is prepared for transmission, but a particular multicast stream is sent to a particular receiver only when requested by that receiver. That's the teaching of Baldwin. That's how the receiver knows which stream to join is because it queries the transmitter, transmitter tells it which one to join, and that's the teaching of Baldwin. There really is no ambiguity with respect to that, and we argue that the board's findings on Baldwin just lack sufficient or lack substantial evidence. With respect to the motivation to combine section, it's very important to understand exactly what they argued and what the board found in its decision. In their petition, they say Cooper and Baldwin. They don't say Cooper, Baldwin, Cooper in view of Baldwin, Baldwin in view of Cooper. They just say Cooper and Baldwin, and they go through and argue that each one of these references supposedly teaches each one of the limitations of Claim 1. The board understood what their argument was, and the board said specifically on page 9 of their decision. They say that they're arguing Cooper's receiver teachings with Baldwin's teachings provide alternative streams with staggered access points and selecting the stream with the next developed access point. They understood exactly what they argued, and they understood their motivations to combine. They didn't find that there was no motivation to combine. What they found was that they, it says, among other problems, this is on page 9, it is not clear how or where petition relies on the proposed combination to satisfy any particular claim limitations. And with respect to counsel's argument about 1D, they say, well, if Cooper doesn't teach it, you can put in Baldwin for that teaching. But they don't explain how that system would work. Because remember, and this is undisputed, with respect to the Cooper reference, you're talking about a multiplex system where you take two streams and you combine them into a single stream. That's very different than how the Baldwin reference works. You have a single transmitter sending out multiple streams of the same content. It's not multiplexed. So in this combined, there's just, so as we argue. Can I just add? Yes, sir. It seems to me that even at page 9 there, the board is making a different kind of how point from the one you're making. We often get board decisions that say there's something deficient about the persuasiveness of the contention of a combination of A and B. Namely, you don't say how A and B are going to be put together to arrive at the claim limitation. I'm not sure that that's what the board is saying in this paragraph, the Among Other Problems paragraph on Appendix 9. It seems more that it's talking about the petitioner not sort of saying how the combination satisfies a particular claim limitation, not how the combination would work. So it's a defect in the petitioner's presentation. So I'm not sure that that's really the same point. I understand what you're saying. In this case, we'll talk about limitation 1D. They don't describe how that combination would work because if you took Baldwin's teachings and suddenly put them into the Cooper receiver, they don't describe how that system would satisfy the limitation because in the Cooper reference, the receiver is trying to identify which one of the multiplex streams would work, and in the Baldwin system, the transmitter is the one telling where the random access points would be in the various streams. Those are very different systems. And so they're exactly right. It doesn't clearly state how – basically on page 9, it says, without clearly stating how the references are to be combined and how those combined teachings satisfy particular limitations. And a good example of this is, remember – So I guess if one is looking at that with respect to the bottom of Appendix 71, which is the petition passage, it says combining Cooper's receiver teachings with Baldwin's teachings of providing alternative streams with staggered access points and selecting the stream with the next available. That seems to me to be making an argument about 1D coming out of Baldwin, not out of Cooper. So that sense of how these things are working is, I think, there. And I'm not sure that the Board recognized that and then went on to the more substantive inquiry about, I don't know, what's under the hood of the combination, how the combination would actually work in practice. Because there's no further discussion in the Board's opinion of that, how it would work in practice question. Well, the Board absolutely understood that was their argument. If you look on page 9 of the Board's decision, at the very top they say exactly what that argument is. Cooper's receiver teachings with Baldwin's teachings of providing alternative streams with staggered access points. They knew exactly what Netflix was arguing. And they said, you didn't clearly set forth how that would work. And this is an example. If you took Baldwin and you said, well, Baldwin's going to teach 1D, well, then a person of ordinary skill would say, well, we would use Baldwin for the whole teaching, right? Because it doesn't say we're going to use Cooper for elements as an example, elements 1A, 1B, 1C, and then we're going to switch to Baldwin, then we're going to go back to Cooper for 1E. None of that's ever discussed in the specification. And a good example of this, remember, the dependent claims are the ones that survive. So as an example, claim 6, and it says, the method of claim 1B, receiving the plurality of video streams, comprises receiving the plurality of video streams simultaneously over a single multistream channel. They say Cooper teaches that. But if you're using Baldwin's receiving techniques, that doesn't make any sense. It doesn't go together. So when they described these dependent claims, they relied on Cooper solely with respect to claims 6, 17, 8, and 11, without ever describing how that whole system would work in combination. They simply said Baldwin teaches everything, Cooper teaches everything, and if you substitute Baldwin in for Cooper, there's no description as to how that system would work. So the board knew exactly what they were arguing. They looked at it, and they said it wasn't clearly articulated in the petition. Thank you. Thank you, Your Honor. Will we still have two minutes? Thank you, Your Honor. So I just wanted to agree that the board did not find a lack of motivation to combine. They didn't reach it. That's why we need a remand. And this whole issue is relevant because we rely on the combination for these four dependent claims that survive. Now, what's interesting is we heard a lot of arguments that kind of sound like some sort of argument that our prior wouldn't be enabled for the dependent claims. The problem for Avago is they didn't make any specific arguments for the dependent claims. If you look at what they put in their patent owner response, just look at the table of contents on 953, they gave about a page for each of these dependent, for all the dependent claims, one or two pages. So they didn't make any arguments or present any arguments that what we said in the petition with respect to the dependent claims and how you would combine them and use them wouldn't be enabled. So with that, Your Honor, unless there's any questions. Thank you. We thank both sides. The case is submitted.